LAWSON KINGSBURY & others *vs.* JOHN A. GOULD, Executor.

A testator directed, by his will, that his son and his son's wife should be maintained by his executor, out of his estate, and that their children should also be so maintained, until they should come of age :  He further directed, that his estate, real and personal, should be kept by his executor, as a fund for the purpose of paying all the legacies given by his will, and for maintaining the persons aforesaid, and that, after such directions should be complied with, the residue of his estate. if any, should be divided among his grandchildren.   *Held,* that both the real and personal estate of the testato. vested in his execu+or upon the same trusts.

A testator, leaving $80,000, and an only child, a son, who had several minor children, devised to his son's wife the use of one half of a house in which she lived, and one half of the furniture therein : He also directed his executor to maintain, out of his estate, his son and his son's wife, during life, taking their several receipts for the same, and also to maintain their children, until they should respectively come of age : The said house was small, uncomfortable and unsuitable for the son's family. *Held*, that the executor was authorized, and that it was his duty, to hire a house suitable for said family, if one could be hired, for five or seven years, in the town where said family resided ; and that, if such house could not be there so hired, he was authorized, and it was his duty, to erect a house, in said town, suitable for said family, and to purchase furniture suitable therefor.

THIS was a bill in equity brought by Lawson Kingsbury and his wife, and their eight children, seven of whom were minors. The bill alleged that Asa Kingsbury, late of Walpole, in the county of Norfolk, father of said Lawson, died on the 12th of August 1840, leaving a last will, which was duly proved and allowed, of which the defendant was appointed executor, and accepted the trust, and which contained (among other things) the following clauses : " *Item.* I give and bequeath to Lawson Kingsbury, my son, ten dollars, to be paid immediately after my decease. It is further my will, that he be prudently maintained by my executor, out of my estate, during his natural life ; my executor taking said Lawson's own receipt for the same, so that he may receive it free from all control of his creditors. *Item.* I give and bequeath to Sophia, wife of the before named Lawson, ten dollars, to be paid immediately after my decease. Also the use and improvement of one half of the house and land where she now lives, and one half of the furniture in said house. The furniture and house to be held for her by my executor to this my will. And it is further my will, that she be maintained by my executor, out of my estate, so long as she shall remain the wife or widow of the before named Lawson ; my executor taking her own receipt for the same, so that she may receive the same free from all control of her husband, or of his creditors. *Item.* It is also my will that the eight children, which the before named Lawson and Sophia now have, be prudently maintained by my executor, out of my estate, until they arrive at full age ; and that they may have a common school

education, and be brought up to habits of industry and morality.    And it is further my will, that my executor pay, out of my estate, to the children of the before named Lawson and Sophia, as follows :   To the four sons " (naming them) " the sum of five thousand dollars each, when they become of full age ; allowing them the privilege, if they may see cause, to let the . whole or a part of said sum remain in the hands of my executor, and receive interest on the same.    To the four daughters " (naming them) " the sum of two thousand dollars each, when they become of full age, allowing each of them the privilege," &c. (as in case of the sons.)    " *Item.* It is my will, that the remainder of my estate, both real and personal, which I may die possessed of, should be kept as a fund, by my executor or his successors in that office, for the purpose of paying all the before named legacies, as they become due, and for supporting and maintaining the several persons, as before directed in this my will and testament.    And if any thing shall remain of my estate, real or personal, after complying with all the above named provisions, and paying all my just debts, and all funeral expenses, and my executor or his successors in that office for their services," &c., " it is my will *to give the said remaining* estate *to* such of my before named eight grandchildren as may at such time be living, to be divided among them, *in such manner that each grandson* shall have double the amount which each granddaughter may receive.    If any of the before named grandchildren shall be dead at the time of such division, and have issue then living, such issue shall be entitled to the part that their parents would have been entitled to if then living ; to all and each of the persons who may receive the property, to them, their heirs and assigns forever."

The bill averred that the property, bequeathed as above, was about $80,000, and that the income thereof was sufficient (after deducting the sums to be paid to the aforesaid eight children on their coming of age) to meet all the expenses of said Lawson's family, and all the charges to which said estate was liable, and leave a surplus, annually, to be added

to the principal: That the dwelling-house, occupied by the plaintiffs, was small, inconvenient, uncomfortable and unsuitable for the said family, and must necessarily be abandoned, if the plaintiffs remain together as a family; and that no better use could be made of their large estate, than that of providing for them a suitable dwelling: That they had applied to the defendant, to appropriate out of the estate of said Asa, the testator, devised and bequeathed to them, as aforesaid, a sum sufficient to erect, upon the land of said testator, devised to them as aforesaid, a suitable dwelling-house and other buildings, to remain a part of said estate, to be distributed according to the provisions of said will; but that the defendant, denying that he has authority so to do, declines to grant to the plaintiffs any relief in the premises.

The prayer of the bill was, that the defendant might be authorized and ordered to appropriate, out of said estate, a sum not exceeding $10,000, for the purpose of erecting a suitable dwelling-house for the plaintiffs, and a further sum, not exceeding $2000, for the purpose of purchasing furniture for their use and accommodation.

The defendant, in his *answer*, admitted most of the facts alleged in the bill, but did not admit that the income of the said testator's estate, after deducting the legacies to be paid to said Lawson's children when they shall come of age, would be sufficient to meet all the expenses of said family, and leave a surplus, annually, to be added to the principal. He also submitted to the court, whether it did or did not appear, from the said will, that the testator intended that said Lawson's family should continue to occupy the house mentioned in said will, during the life of the said Sophia. He stated that he did not deem himself authorized, by said will, to make the appropriation demanded by the plaintiffs; that he believed that such an investment would not be a prudent and proper mode of providing a dwelling-house for them, and that he had therefore declined to comply with their request; but that he had offered to hire a suitable dwelling-house for their accommodation. or to allow them a sum of money sufficient to hire such

house for themselves. But he declared himself ready and willing to do whatever the court should think fit in the premises, and prayed for that just protection which should be granted, by a court of equity, to a trustee acting in good faith.

A replication was filed by the plaintiffs, and evidence was taken, which is referred to in the opinion of the court.

*Fletcher & B. Sumner,* for the plaintiffs.

*B. R. Curtis & Cleveland,* for the defendant.

SHAW, C. J. The personal property of the testator was undoubtedly vested in the executor, to be held upon the trusts declared in the will. And though the legal estate in fee is not devised to the executor, in terms, yet no question, on that point, was suggested at the argument; and we therefore are of opinion, that both the real and personal estate vested in the executor, upon the same trusts, to go to the same persons, and in the same proportions.

1. On the first ground suggested in the bill, the court are of opinion that the bill cannot be sustained upon that part of the trust, declared in the will, which directs the investment of the trust fund. So far as security and productiveness are concerned, there is no suggestion that it is not well invested. The court would be slow to interfere to control the discretion of the trustee on this subject, and would do so only in a case where it should be made apparent that the actual or proposed investment would put the fund at hazard, or otherwise threaten a great loss to the beneficiaries.

2. If the bill can be sustained at all, it must be on the trust to maintain the complainants. The phraseology of the testator, in his will, is this: In regard to his son, "that he be prudently maintained;" as to his son's wife, "that she be maintained;" and as to the eight children, that they "be prudently maintained by my executor, out of my estate, until they arrive at full age."

Maintenance is a term of somewhat large import, and must be construed in reference to the subject. Taking the amount of the estate, and the relations of the parties, we think it was

not intended, in this will, to be confined to a bare subsistence; such amount as would be sufficient to board them singly. These parties were all to be maintained; the parents for their lives, and the children whilst under age. The parents were still to have the care, custody and education of their minor children, and the children were still entitled to the protection and comfort to be derived from their parents. It is a reasonable construction of the provision, that it was intended that they should live together in the enjoyment of family relations, and the rights and duties arising therefrom. Had such provision been made for the maintenance of a single person, of either sex, of mature age, it might reasonably have a different construction.

Supposing, then, that it is a just and equitable construction of this trust, that this family are to be maintained together, at least whilst a majority of the children remain under age, the question is, whether it is within the power of the trustee, and if so, whether it is a proper and just fulfilment of that trust, to provide for them a dwelling-house.

We are aware that it is a rule in equity, that under a trust for maintenance, the court will not, in general, authorize the application of capital to maintenance, unless when it is quite small, and the occasion urgent; but it cannot have much application to a case like this. It is not here proposed to *expend* any portion of the capital for maintenance, but to place a portion of the capital, subject to the same trusts as before, in such a situation, that those who, as a family, are entitled to maintenance, may have the specific use and occupation of it, instead of its being placed in such a situation as to yield income, and that income to be so applied.

The clause, directing the separate receipt of the husband and of the wife, respectively, to be taken, is relied upon to show the understanding of the testator that this provision for maintenance would be paid in money. As it might all be paid in money, and as part of it would, probably, be so paid, such a provision was proper, to effect the object of the testator, which obviously was, as to the husband, to exclude cred-

itors, and as to the wife, to make it independent of the husband. But it carries no implication that the whole must be paid in money, and therefore does not exclude the inference of an intention, on the part of the testator, that the son, and his wife and family, might have the use of a part of the trust property, as incident to part of the provision for their maintenance.

One mode of testing the question would be this : Suppose the father, leaving an only son and child, (as in the present case,) with a family, had left a suitable and convenient dwelling-nouse — his own mansion house, or any other — would it not have been a good execution of the trust, especially during the minority of most of the children, to permit the son, with his children, to occupy such house, as a part of the provision for maintenance ? We think it would.

As to providing a house when the trust estate does not supply one, there are certainly some objections to it. It would be, in the first instance, a means of providing maintenance for the parents and seven of the children only, and for them whilst they continue to be minors ; but the children are successively to come of age, when the provision for their maintenance, respectively, will cease, whilst the investment in the house will remain the same. Although this is an objection to this specific mode of providing maintenance, we think it is not decisive. Taking the ordinary chances of life, the parents are likely to survive a considerable number of years, and whilst they live, they will need a dwelling-house for themselves ; and although the children, after coming of age, will not be entitled, in strict right, to the use of the house, as part of their maintenance, yet it is among the reasonable wants of such parents, to be able to afford hospitality, at their own house, to their emancipated children.

But we do think there is so much weight in this objection, that it should deter the trustee from building a house, if a suitable one can be hired for a considerable number of years, say five or seven years ; and it should also deter him from building a house so large or expensive, that it would not

readily sell, at nearly the cost, after a suitable deduction for wear and decay; or that would not let at a rent which would be a fair income on the investment, or as nearly so as houses, in a similar situation, will usually sell or let. By keeping within these limits, the trust estate will not be essentially diminished. As Framingham is the place where the family resided during the testator's life time, and have continued to reside since, and, as appears by the evidence, is altogether a suitable and convenient place for the residence of such a family, having regard to schools and the means of education, we think it is within the authority of the trustee, and his duty, in that capacity, to procure a suitable house in Framingham, of a style such as would render it a suitable investment of capital in that town, so that, after it should cease to be used for the family, it might remain part of the trust property, for the purpose of being let or sold. But this would exclude a house of elaborate and expensive finish and high cost, not likely to be sold or let, in that place, for a price reasonably proportioned to the cost. We should be inclined to think, from the evidence adduced, that such a house might be erected at a cost somewhere from three to five thousand dollars.

But we think that such investment is not necessary, if a suitable house can be hired, at a fair rent, for *five or seven years;* and if a house is necessary to be built, it is not for the court to prescribe the details, that may be properly referred to a master.

It may also be matter of doubt, on the evidence, whether the lot described in the bill would be suitable for the purpose, and whether it would be expedient to build thereon.

We think, therefore, it is proper to refer it to a master, to inquire and report, *first*, whether a suitable house in the town of Framingham can be hired, for a term of time, at a reasonable rent, suitable for the residence of such a family; if not, *secondly,* what would be the cost of a house in that town, suitable for such a family, and which, within the principles above stated, would be a reasonably fair investment of the property,

having regard to the future sale of the house, or to the rent which would be likely to be obtained for it; *thirdly*, whether it would be expedient, having regard both to the title and to the economy of building, to erect a house on the lot described in the bill, or whether a more suitable and eligible lot can be purchased, at a reasonable cost, in Framingham, and how the title should be taken, so as to make it a part of the estate, liable to, and bound by, all the provisions and trusts of the will.

As to an investment in furniture, we are of opinion that the same reasons apply; and that it is within the power, and is the duty, of the executor and trustee to appropriate from the trust fund a sum sufficient to furnish the said house, when hired or erected, in a suitable manner. One reason for this, in addition to the grounds stated, is this: This house is to be, in part, for the maintenance of the wife and minor children, which it could not be, if not furnished. Now, if by way of a provision for maintenance, the trustee should furnish Lawson Kingsbury with money to purchase furniture — which seems the only alternative — it would, when purchased, be his property and liable to be taken for his debts; contrary to the plain intention of the will. But if a suitable amount be invested by the executor and trustee, in his own name, as such, it will remain his property; by means of which, all the beneficiaries, the wife and children as well as Lawson Kingsbury himself, will specifically enjoy the benefit of it, as trust property. And though it may be diminished in value by use, and if the trust last long enough, may wear out, yet such gradual diminution will stand in the place of the expenditure of money for the same purpose, and will relieve the residue of the trust fund to the like extent.

We think, therefore, it may be referred to the master, to inquire and report what amount it may be necessary to expend for the furniture of said house, when ready for occupation.

All other directions are reserved till the coming in of the report.